**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

DANZEL STEARNS                                                                              PLAINTIFF

v.                                    3:16cv00339-BRW-JJV (lead case)

INMATE SERVIES CORPORATION;
and DOES 1 to 100                                                                      DEFENDANTS

MICHAEL PETERS                                                                          PLAINTIFF

v.                                    3:18cv00015-BRW (consolidated case)

INMATE SERVICES CORPORATION                                                     DEFENDANT

NATIONAL CONTINENTAL INSURANCE COMPANY          INTERVENING PLAINTIFF

v.

DANZEL STEARNS;
INMATE SERVICES CORPORATION;
DOES 1 to 100;
SCOTTSDALE INSURANCE COMPANY                    INTERVENING DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy

Roy Wilson.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.    INTRODUCTION

Danzel Stearns ("Plaintiff") has filed this action alleging Defendants Inmate Services Corporation ("ISC") and John Does, who are up to one hundred unknown ISC agents and employees, violated his constitutional rights, as protected by 42 U.S.C. § 1983, and California Civil Code § 52.1 when they transported him from Colorado to Mississippi from September 17

to 24, 2016.[1]  (Doc. Nos. 1, 10.)  Plaintiff has filed a Motion seeking class certification of these claims, to which Defendants have objected.  (Doc. Nos. 50, 55.)  All parties are represented by counsel.

Defendants ISC and Does[2] have filed a Motion for Summary Judgment, arguing they are entitled to judgment as a matter of law.  (Doc. Nos. 69, 70.)  Plaintiff has filed a Response, and Defendants have filed two Replies.  (Doc. Nos. 71, 73, 74, 76.)  Thus, this matter is now ripe for a decision.

After careful review of the pleadings and for the following reasons, I find Defendants' Motion for Summary Judgment should be granted as to the § 1983 claims, and I recommend those

---

[1] The procedural history of this case is complex.  It was originally filed on November 15, 2016, in the Eastern District of California.  (Doc. No. 1.)  On December 2, 2016, it was transferred to "the Eastern District of Arkansas pursuant to 28 U.S.C. § 1404(a) in the interests of justice because the sole named defendant is headquartered in that district, and because plaintiff does not reside in the Eastern District of California."  (Doc. No. 5 at 2).  In the Response to the Motion for Summary Judgment, Plaintiff incorrectly states "the Court previously concluded the PLRA's requirements did not apply to Plaintiff's claims in this case."  (Doc. No. 71 at 17.)  To the contrary, the Court specifically ruled the PLRA *applies* to this case because Plaintiff was in custody when he filed it.  (Doc. Nos. 28, 29.)  The Court then found Defendants were not entitled to dismissal, pursuant to the PLRA's exhaustion requirement, because administrative remedies were unavailable to Plaintiff.  (*Id.*); *see also* 42 U.S.C. § 1997e(a) (prisoners and detainees cannot bring an action until "such administrative remedies as are available are exhausted").

On May 29, 2018, this case was consolidated with another lawsuit challenging how Defendant ISC transported prisoners, *Peters v. Inmates Services Corp.,* 3:18CV00015 BRW, "for discovery purposes." (Doc. No. 49.)  *Peters* is notably different from this lawsuit because: (1) it is a diversity negligence action, brought under Ohio state law, that does not include any constitutional claims; (2) the PLRA is inapplicable because Peters was not in custody when he filed it; (3) discovery is scheduled to end in *Peters* on February 20, 2019, while discovery in this case has concluded.

In August 2018, National Continental Insurance Company and Scottsdale Insurance Company were allowed to intervene in this action to seek declaratory judgments regarding their duties to defend and indemnify under separate insurance contracts they entered into with Defendant ISC. (Doc. Nos. 54, 63.)

[2] Despite the fact that this case has been pending since November 15, 2016, and discovery concluded in July 16, 2018, Defendants have not moved to substitute the Doe Defendants with the correct ISC agents and employees. (Doc. Nos. 1, 40.)

claims be dismissed with prejudice.  Rather than dismissing Plaintiff's California state law claim

on the merits as requested by Defendants, I recommend the Court decline to exercise supplemental

jurisdiction over that claim and dismiss it without prejudice.  For the same reason, I recommend

the state contract claims raised by Intervenors National Continental Insurance Company and

Scottsdale Insurance Company be dismissed without prejudice.  Finally, I recommend Plaintiff's

Motion for Class Certification (Doc. No. 50) be denied as moot and the consolidation of this case

with the *Peters* negligence action be severed.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or

is genuinely disputed must support the assertion by citing to particular parts of materials in the

record, "including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a

light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th

Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the

existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825

(8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative

evidence that would permit a finding in his favor on more than mere speculation, conjecture, or

fantasy.  *Id.*  (citations omitted).  A dispute is genuine if the evidence is such that it could cause a

reasonable jury to return a verdict for either party; a fact is material if its resolution affects the

outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.    FACTS

The facts, taken mostly from Plaintiff's deposition and viewed in the light most favorable to him, are as follows.  (Doc. Nos. 70, 71, 73, 76.)  ISC is a small, private company located in West Memphis, Arkansas, with approximately ten employees and two to four vehicles it uses to transport convicted prisoners and pretrial detainees between various correctional facilities across the United States.  (Doc. No. 71-3.)

On September 17, 2016, an ISC van, driven by Mr. Chris Weiss and Ms. Ryan Moore, picked-up Plaintiff, who was a pretrial detainee at a county jail in Colorado Springs, Colorado, to transport him to a county jail in New Albany, Mississippi, to face state drug charges.  (Doc. Nos. 69, 71-1.)   Rather than driving directly to Mississippi, the van traveled through California and numerous other states where additional prisoners were picked up and dropped off at other facilities. (*Id.*)

The eight-day trip was continuous, without any overnight stops.  (*Id.*)  The drivers took turns sleeping on a mattress in the front of the van, while Plaintiff and the other passengers remained in upright, seated positions. (*Id.*)  Although Plaintiff was not allowed to lie down, he admitted during his deposition that he was able to take thirty-minute "catnaps" while in a seated position and he was able to get out of the van to stretch when it stopped for refueling or bathroom breaks.  (Doc. No. 71-7 at 18, 44.)  Plaintiff's buttocks allegedly became raw from the prolonged sitting, and the van drivers provided him with an over-the-counter cream to treat it.[3]  (*Id.* at 43,

---

[3] One handcuff was removed so Plaintiff could apply the cream.  (*Id.* at 54.)

52.)

Throughout the journey, Plaintiff was in handcuffs and leg shackles with a belly chain connecting the two restraints.  (Doc. No. 71-7 at 8-9.)   Plaintiff claims the restraints caused the skin on his ankles and wrists to become "raw" and "irritated," and despite his complaints, they were not loosened or removed.[4]  (*Id.* at 35.)

There were no bathrooms on the van, and bathroom breaks at public gas stations and rest stops were allegedly infrequent.  (*Id.* at 30-34.)  As a result, Plaintiff claims he was forced to urinate in a cup on two or three occasions, that other prisoners accidentally spilled urine on the van floor while doing the same, and that one prisoner soiled herself.  (*Id.*)  Plaintiff also asserts his restraints were not removed or loosened while he used the bathroom, thereby making it impossible for him to properly wipe or wash his hands.  (*Id.*)  Plaintiff says this caused him to have "clogs of manure in my drawers."  (*Id.* at 31.)

During his deposition, Plaintiff testified he received fast food for breakfast and dinner, but no lunch. (*Id.* at 45-48.)  Plaintiff says he was given a bottle of water once, but otherwise only received fluids with meals.  (*Id.* at 49-50.)  Plaintiff alleges Mr. Weiss threatened him with a gun and mace when he asked for a shower and a pack of cigarettes.  (*Id.* at 27-29.)

Plaintiff was not allowed to brush his teeth, shave, bathe, or use hand sanitizer throughout the trip. (*Id.* at 28, 39, 51.) Plaintiff claims this caused him to develop a quarter-size patch of ringworm on his stomach, but there is no evidence he reported it to either driver.  (*Id.* at 55-56.)

Plaintiff arrived at the Mississippi jail on September 24, 2016.  (Doc. Nos. 69, 71-1.)  He received oral antibiotics for ringworm, which "went right away."  (Doc. No. 71-7 at 55-56, 60.)

---

[4] During his deposition, Plaintiff testified Ms. Moore loosened his shackles right after she first put them on in Colorado.  However, Plaintiff claims his handcuffs and ankle shackles were not loosened or removed for the remainder of the trip.  (Doc. No. 71-7 at 15, 34-35.)

However, Plaintiff did not report any other medical problems (such as raw buttocks from constant sitting or skin irritations from the restraints) during his intake examination or confinement at the county jail.  (*Id.* at 54-55, Doc. No. 76.)

## IV.    ANALYSIS

### A.    § 1983 Constitutional Claims

To bring a § 1983 claim, a prisoner must allege a state actor, or person acting under color of state law, violated a right secured by the Constitution or federal statute.  *West v. Atkins*, 487 U.S. 42, 48 (1988).   Defendants ISC and Does concede, for purposes of summary judgment, they were acting under color of state law when they transported Plaintiff.   (Doc. No. 70-1 at 6.)

Because there is no *respondeat superior* liability in § 1983 actions, Defendant ISC cannot be held vicariously liable for the constitutional violations allegedly committed by the Doe Defendants.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Burke v. N. Dakota Dept. of Corrs. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002).  Instead, Defendant ISC can only be held liable if it had a "policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also Sanders v. Sears Roebuck & Co.,* 984 F.2d 972, 975-976 (8th Cir. 1993).

Because Plaintiff was a pretrial detainee, his constitutional claims fall under the Fourteenth Amendment rather than the Eighth Amendment, which applies to convicted prisoners.  *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979).  However, as will be discussed herein, the Eighth Circuit often applies the same standard to claims brought under either constitutional provision.   I will analyze each of Plaintiff's § 1983 claims separately.

#### 1.    Excessive Force

Plaintiff's first § 1983 claim is that Defendants used excessive force when they restrained

him in handcuffs, ankle shackles, and a belly chain for the duration of the eight-day trip. The Supreme Court has recently held the "malicious and sadistic" standard that applies to convicted prisoners cannot be applied to an excessive force claim brought by a pretrial detainee.[5] *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2471 (2015). Instead, to prevail on a Fourteenth Amendment excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473. When making this determination, the fact finder may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 2473; *see also Jackson v. Buckman,* 756 F.3d 1060, 1067 (8th Cir. 2014).

It is undisputed that Plaintiff and twelve to fifteen other detainees were transported by two guards, and their journey took them outside the secure walls of a correctional facility and into contact with the general public at refueling and restroom stops. Given these circumstances, constant restraints were clearly an objectively reasonable application of force to protect the public, the drivers, Plaintiff, and the other van passengers.[6] *See Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010) ("The prevention of escape while transporting pretrial detainees is a legitimate

---

[5] The *Kingsley* decision resolved a split among the circuits as to whether the subjective, malicious and sadistic test or the objective, reasonableness test applied to excessive force claims brought by pretrial detainees. The *Kingsley* Court adopted the later test, which has long been the law in the Eighth Circuit. *See Jackson,* 756 F.3d at 1067.

[6] Defendants say federal law requires "violent" prisoners to be restrained with handcuffs, ankle shackles, and a belly chain throughout transport. (Doc. 70-1 at 8 citing 34 U.S.C. § 60101 and 28 C.F.R. § 97.17.) There is no indication in the record that Plaintiff was a violent prisoner. Nevertheless, as noted in the congressional findings supporting this statute, it is common for the transport process, by either U.S Marshals or private transport companies, to "last for days if not weeks." 34 U.S.C. § 60101(2).

governmental purpose"); *Haslar v. Megerman,* 104 F.3d 178, 180 (8th Cir. 1997) (holding a policy of shackling pretrial detainees while outside the confines of the correctional facility "serves the legitimate penological goal of preventing inmates awaiting trial from escaping").  Plaintiff concedes as much in his Brief and clarifies that, rather than challenging the continual use of restraints (as he appears to have done in the Amended Complaint), his constitutional rights were violated because the restraints were applied too tightly, never loosened, and caused the skin around his wrists and ankles to become "raw" and "irritated."  (Doc. No. 71 at 9-10; Doc. No. 71-7 at 74-76.)

"[A] *de minimus* use of force is insufficient to support a [constitutional] claim."  *Jackson*, 756 F.3d at 1068; *Chambers v. Pennycook,* 641 F.3d 898, 906 (8th Cir. 2011).  The extent of the injury suffered, while not dispositive, is a highly relevant factor in determining whether the amount of force used was *de minimus* and objectively reasonable in light of the circumstances.  *Wilkins v. Graddy,* 559 U.S. 34, 37-39 (2010); *see also Brossart v. Janke,* 859 F.3d 616, 626 (8th Cir. 2017) (holding the "infliction of only *de minimus* injuries supports the conclusion that the officer did not use excessive force").  Consistent with this reasoning, the Eighth Circuit has acknowledged handcuffing "almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied."  *Chambers*, 641 F.3d at 907.  Thus, for "the application of handcuffs to amount to excessive force, there must be something beyond minor injuries."  *Id.* (quoting *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005)).

During his deposition, Plaintiff testified the restraints made his skin "raw" and "irritated" but "after – you know, after a while, it going to go away."  (Doc. No. 71-7 at 74.)  Further, there is no indication Plaintiff sought or obtained any medical treatment from Mississippi jail officials for any injuries he allegedly suffered as a result of being restrained during transport.  *See Beaulieu*

*v. Ludeman,* 690 F.3d 1017, 1033 (8th Cir. 2012) (affirming summary judgment when plaintiffs "did not allege, or present any medical records indicating [that they] suffered any long-term or permanent physical injury as a result of the handcuffs"); *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1008 (8th Cir. 2003) (same).  Given the relatively minor injuries and the admitted need for constant restraints for the safety of the public, the transporting officers, and all van passengers, I conclude no reasonable juror could find that the use of restraints here was objectively unreasonable.  Accordingly, I recommend Defendants ISC and Does be granted summary judgment and Plaintiff's excessive force claim be dismissed with prejudice.

### 2.    Inadequate Medical Care

Plaintiff contends Defendants failed to provide him with constitutionally adequate medical care while he was being transported.  It is unclear whether Plaintiff raises this as a stand-alone claim or part of his allegation that the conditions of his confinement while being transported - in total - were unconstitutional.  In an abundance of caution, I will address it in both manners.

The Eighth Circuit applies the same standard to inadequate medical care claims brought by convicted prisoners and pretrial detainees, such as Plaintiff.  *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) ("we hold that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety").  To proceed to trial on that claim, Plaintiff must have evidence that: (1) he had an objectively serious medical need; and (2) Defendants subjectively knew of, but deliberately disregarded, that serious medical need.  *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).  Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk."  *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001).

It is questionable whether Plaintiff's sore buttocks and quarter-size patch of ringworm,[7] which Plaintiff admits went "right away" as soon as he began taking medication, constitute objectively serious medical needs.  As to the subjective factor, Plaintiff admits Mr. Weiss and Ms. Moore provided him with an over-the-counter cream to apply to his sore buttocks, and there is no evidence he sought further treatment for that condition upon arriving at the Mississippi jail.  *See Fourte v. Faulkner Cty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner").  As to the ringworm, there is no evidence that Plaintiff reported it to either van driver or that he was harmed by the brief delay in receiving treatment for that condition at the Mississippi jail.  *See Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998) (to satisfy the subjective component of deliberate indifference "there must be actual knowledge"); *Jackson v. Riebold,* 815 F.3d 1114, 1119 (8th Cir. 2016) (to avoid summary judgment, a prisoner must "place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment").  For these reasons, I conclude Defendants ISC and Does are entitled to summary judgment on any freestanding § 1983 inadequate medical care claim Plaintiff may be attempting to bring against them.

3.    Inhumane Conditions of Confinement

Plaintiff alleges he was subjected to a variety of inhumane conditions of confinement during his eight-day transport including the inability to sleep in a prone position, inadequate food and water, infrequent bathroom breaks, insufficient ability to attend to personal hygiene, lack of

---

[7] Ringworm is a "fungal infection" caused by "direct, skin-to-skin contact with an infected person or animal." *Mayo Clinic Website;* https://www.mayoclinic.org/diseases-conditions/ringworm-body/symptoms-causes/syc-20353780.  Plaintiff has not presented any evidence ringworm can be caused by not bathing or changing clothes for eight days.

exercise, and inadequate medical care.

The "Constitution does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To the contrary, only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of a constitutional violation. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). This is a very high standard the Eighth Circuit currently applies to both convicted prisoners and pretrial detainees.[8] *See, e.g., Davis v. Oregon Cty., Mo.,* 607 F.3d 543, 548 (8th Cir. 2010); *Butler,* 465 F.3d at 345.

Thus, to proceed to trial on his inhumane conditions of confinement claim, Plaintiff must have evidence that: (1) objectively, he endured an extreme deprivation that resulted in the denial of the minimal civilized measures of life's necessities or created a substantial risk to his health or safety; and (2) subjectively, Defendants ISC and Does were deliberately indifferent to the risk of harm posed by the deprivation. *See Id.* As to the first factor, which is the crux of this case, the length of time a plaintiff is subjected to a challenged condition is crucial to determining whether it rises to the level of a constitutional violation. *See Whitnack v. Douglas Cty.*, 16 F.3d 954, 958

---

[8] In *Ingram v. Cole Cty.*, 846 F.3d 282 (8th Cir. 2017), a three-judge panel held an objective reasonableness standard, rather than the subjective deliberate indifference standard, should be applied to conditions of confinement cases brought by pretrial detainees under the Fourteenth Amendment. However, the decision was vacated by a divided court, sitting *en banc*, which ultimately affirmed the trial court's dismissal of the action without resolving the issue of whether an objective reasonableness standard should be applied to conditions of confinement claims brought by pretrial detainees. *Ingram v. Cole Cty.*, No. 16-1046, 2018 WL 3618687 (8th Cir. Jul. 30, 2018) (unpublished per curium). Given no clear holding to the contrary, the law in this circuit remains that the subjective, deliberate indifference standard applies to conditions of confinement claims brought by pretrial detainees. Further, even if the objective test is applicable, I find the restrictions imposed during Plaintiff's eight-day journey were "reasonably related to a legitimate government objective" of maintaining safety for the public, drivers, and passengers, and therefore, it was not impermissible "punishment" of a pretrial detainee. *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

(8th Cir. 1994) (explaining exposure to unsanitary conditions of confinement may "be tolerable for a few days and intolerably cruel for weeks or months," and that "the length of time required before a constitutional violation is made out decreases as the level of filthiness endured increases"). For the following reasons, I conclude the unpleasant and uncomfortable conditions Plaintiff experienced during his eight-day journey - whether viewed individually or collectively - do not rise to the level of a constitutional violation.

a.     Food and Water

The Constitution requires detainees and prisoners be provided with nutritionally adequate meals and sufficient drinking water. *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). To avoid summary judgment, Plaintiff must have evidence "the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Id.*

In the Amended Complaint, Plaintiff alleged his constitutional rights were violated because Defendants only fed him "fast food during transport." (Doc. No. 10 at 4.) However, during his deposition, Plaintiff admitted he regularly ate fast food while not in custody and the type of food he received was satisfactory. (Doc. No. 71-1 at 88.) Instead, Plaintiff believes his constitutional rights were violated because he did not receive lunch[9] or fluids other than with his two daily meals. (Doc. No. 71-1 at 85-89.) Although Plaintiff would have preferred receiving more meals and fluids, he has not presented any evidence demonstrating he lost weight, suffered from dehydration, or that his health was otherwise adversely affected by the reduced meals and fluids he received

---

[9] During his deposition, Plaintiff testified that when he is not incarcerated, he usually skips lunch and "snacks" throughout the day. (Doc. No. 70-4 at 30-32.)

during his sedentary, eight-day transport. *See Whitney v. Washington Cty. Det. Ctr.*, 16-2760, 2017 WL 4534810 (8th Cir. Oct. 11, 2017) (unpublished decision) (affirming summary judgment when there was no evidence a pretrial detainee's health was adversely affected by receiving reduced meals); *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (finding no constitutional violation when a prisoner was receiving liquids with meals). Accordingly, I find no evidence of a constitutional violation in regard to Plaintiff's alleged food and water restrictions.

### b.    Exercise

Plaintiff alleges he endured inhumane conditions because he was not allowed to exercise for eight days. However, he admitted during his deposition he was able to stretch and walk, albeit in a restricted manner due to his restraints, during gas and bathroom stops. A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Wishon,* 978 F.2d at 449. Plaintiff has not presented any evidence of muscle atrophy or other damage to his health due to his restricted ability to exercise for the short duration of eight days. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (acknowledging "[w]hile thirty-seven days [without any exercise] is perhaps pushing the outer limits of acceptable restriction, we find that it did not constitute an atypical and significant hardship for [the prisoner] in the context of normal prison life"). Accordingly, I find no evidence of a constitutional violation in regard to Plaintiff's exercise restrictions.

### c.    Sleep

Plaintiff also alleges Defendants subjected him to inhumane conditions by refusing to allow him to sleep in a prone position. Importantly, Plaintiff admitted during his deposition he was able to take thirty-minute "catnaps" while remaining in an upright, seated position. Although sleeping in that position may have been more difficult and certainly uncomfortable, it is not enough to

sustain a constitutional violation for the limited duration of eight days. *See Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, (8th Cir. 1996) (finding no constitutional violation when a pretrial detainee had difficulty sleeping for fourteen days due to constant lighting).

> d.   Hygiene

Prisoners and pretrial detainees "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly *over a lengthy course of time*." *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013) (emphasis added); *Beaulieu,* 690 F.3d at 1045.  Plaintiff alleges that for eight days, he was not allowed to shower, shave, brush his teeth or change his clothes; bathroom breaks were infrequent; and his restraints prevented him from properly wiping or washing his hands after using the restroom.[10]  However, the Eighth Circuit has held that similar conditions, *for a limited duration*, do not rise to the level of a constitutional violation.  *See, e.g., Stickley,* 703 F.3d at 422  (no constitutional violation when a pretrial detainee received an insufficient amount of adequate toilet paper); *Scott v. Carpenter,* Case No. 01-1322, 2001 WL 1569567 (8th Cir. Dec. 11, 2001) (unpublished opinion) (no constitutional violation when a handicapped prisoner was only allowed to bathe fifteen times in six months); *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996) (no constitutional violation when a pretrial detainee, who had no clothing other than underwear, was forced to live for four days in a cell containing "raw sewage" from an overflowing toilet).

Additionally, the Eighth Circuit has found no constitutional violation when the plaintiff failed to demonstrate he was injured as a result of inadequate hygiene.  *See, e.g., Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) ("the momentary deprivation of the right to use the bathroom, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an

---

[10] I find the last allegation incredible in light of Plaintiff's deposition testimony that the restraints did not prevent him from sufficiently raising his arms to eat and drink water.  (Doc. No. 71-7 at 78-79.)  Nevertheless, I will presume the truth of that assertion for summary judgment purposes.

Eighth Amendment violation"); *Smith,* 87 F.3d at 268 (finding no constitutional violation when a prisoner was not harmed as a result of being exposed to raw sewage); *Rogers v. Thomas,* 879 F.2d 380, 385 (8th Cir. 1989) (wearing only underwear for fourteen days was "totally unjustified," but not a constitutional violation because the "extent of the pain and injury which [the plaintiff] suffered, if any, was minimal"). Plaintiff alleges he developed a quarter-sized spot of ringworm on his stomach and he had "clogs of manure in my drawers." (Doc. No. 71-7 at 31.) However, he has not offered any evidence demonstrating ringworm was caused by wearing dirty clothes or the inability to bathe. Similarly, there is no evidence that Plaintiff reported having ringworm to either of the van drivers. *See Washington v. Denney*, 900 F.3d 549, 560 (8th Cir. 2018) (explaining deliberate indifference requires actual knowledge). Also, in his deposition Plaintiff explained his raw buttocks was caused by prolonged sitting, and there is no evidence it was caused by an alleged contact with feces. (Doc. No. 71-7 at 70-71, 83, 98-100.)

As with the previously discussed conditions, Plaintiff's inadequate hygiene allegations fail to rise to the level of a constitutional violation given the short duration in which Plaintiff was required to endure them and the admitted lack of harm to Plaintiff's health or safety. Accordingly, I conclude Defendants are entitled to summary judgment on Plaintiff's hygiene claim.

e.    Totality of the Circumstances

In his summary judgment papers, Plaintiff argues the conditions should not be analyzed in isolation, and instead, the Court should consider the "totality of the circumstances" he endured during his eight-day transport. (Doc. No. 71 at 8-9.) Defendants, on the other hand, argue the relevant inquiry is whether Plaintiff suffered a "specific deprivation of a single human need." (Doc. No. 73 at 8).

In *Wilson v. Seiter*, 501 U.S. 294, 305 (1991), which was an inhumane conditions of

confinement claim brought by a convicted prisoner, the Supreme Court held "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." The Court further explained "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of *a single, identifiable human* need such as food, warmth, or exercise - for example, a low cell temperature at night combined with a failure to issue blankets." *Id*. (emphasis added); *see also Whitnack*, 16 F.3d at 957-58 (applying this language from *Wilson* in a conditions of confinement case brought by a pretrial detainee).  For the reasons previously explained, I find no evidence that Plaintiff was deprived of a single, identifiable human need as specified in *Wilson*.

However, in *Morris v. Zefferi*, 601 F.3d 805, 806-07 (8th Cir. 2010), the Eighth Circuit applied a totality of the circumstances analysis to a particularly egregious conditions of confinement claim brought by a pretrial detainee who was transported in full restraints, for an hour and a half, in a three-foot by three-foot dog cage "littered with animal hair and dried dog urine and feces."  After rejecting the trial court's "piecemeal analysis" of the conditions the pretrial detainee allegedly endured, the court said, "[i]n considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the *totality of the circumstances* of a pretrial detainee's confinement."  *Id.* at 810 (emphasis added); *see also Stickley*, 703 F.3d at 423 (8th Cir. 2013) (applying a totality of the circumstances analysis to a pretrial detainee's conditions of confinement claim).  The court then ruled "[b]ased on the totality of the circumstances and accepting Morris's allegations as true, as we must, we conclude [defendant's] decision to transport Morris in this manner 'transgress[ed] today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 685 (1979)).  Interestingly,

in reaching that conclusion, the Eighth Circuit did not cite or distinguish *Wilson*. Nevertheless, I conclude that the totality of the conditions Plaintiff allegedly endured in this case are distinguishable from those suffered by the plaintiff in *Morris,* and consequently, do not amount to a transgression of "today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency." In making this finding, I recognize the justifiable difficulty in transporting prisoners long distances. Unquestionably the trip was arduous. But Plaintiff's facts fail to show his custodians acted with any malice or intentionally bad behavior.

Importantly, this conclusion is consistent with the Tenth Circuit's recent dismissal, *on screening*, of a similar - if not worse - conditions of confinement claim brought against Defendant ISC. *Covalt v. Inmate Servs. Corp.*, No. 15-1247, 2016 WL 4079615 (10th Cir. Aug. 1, 2016) (unpublished opinion). In *Covalt*, the Tenth Circuit explained:

> Mr. Covalt undoubtedly endured unpleasant conditions during the non-stop, circuitous, seven-day journey. According to the complaint, he was prevented from sleeping for any significant period because he was handcuffed, sitting up, and surrounded by other passengers; he was given only three small cups of water each day, causing him headaches and other symptoms; the fast-food sandwiches he was fed three times a day were unhealthy and insufficient to sate his hunger; he was unable to exercise; bathroom breaks were five to six hours apart, causing him to urinate in his pants; his handcuffs prevented him from cleaning himself properly after defecating, causing him to develop a rash; he and the other passengers were not given the opportunity to shower or change their clothes, causing the van to smell bad; the drivers drove carelessly, without taking sufficient breaks, while he was sometimes made to sit on a crate without a seatbelt; he was exposed to secondhand smoke when the drivers and passengers smoked cigarettes after meals; and the drivers did not intervene when he was harassed repeatedly by another passenger.

> Although these conditions are understandably objectionable, we conclude they did not rise to a constitutional violation. Cases where this court has found conditions sufficiently serious to state an Eighth Amendment claim stand in stark contrast to those alleged here. [internal citations to Tenth Circuit cases omitted.] Even considered collectively, the alleged conditions here do not constitute a sufficiently serious deprivation.

*Id.* at 369.

Likewise, other jurisdictions have not found a constitutional violation in transportation cases similar to Plaintiff's. *See, e.g., Wright v. J.S. Extradition Servs., LLC*, No. 3:11CV464, 2012 WL 1681812 (M.D. Tenn. May 11, 2012) (unpublished opinion) (finding no constitutional violation during a five-day transport when a prisoner was unable to loosen his restraints to alleviate edema in his hand and feet, denied medical care for asthma and hypertension, denied clean clothes or the opportunity to bathe, subjected to excessively hot temperatures, provided with insufficient food, and forced to urinate in a cup due to infrequent bathroom breaks); *Juliano v. Camden Cty. Dept. of Corr.,* No. 06-1110, 2006 WL 1210845 (D.N.J. May 3, 2006) (unpublished opinion) (finding no constitutional violation during a ten-day transport when a prisoner was forced to sleep in an upright position, served only fast food, and "handcuffed, leg shackled to the person next to him and forced to wear the 'black box' on [his] wrists making eating and using bathroom facilities paramount to impossible"); *Jensen v. Jorgenson*, No. 03-4200, 2005 WL 2412379 (D.S.D. Sept. 29, 2005) (unpublished opinion) (finding no constitutional violation during a fourteen-day transport when a prisoner was subjected to excessive heat, chained to a bench seat, fed only fast food, given water with meals only, and denied a bathroom break for over twelve hours).

I am sympathetic to the uncomfortable and unpleasant conditions Plaintiff allegedly endured during his eight-day transport. However, as explained at the beginning of my analysis, only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of a constitutional violation. *Hudson*, 503 U.S. at 9. Given the short duration of the trip and the minor injuries allegedly suffered, I conclude the evidence in this case does not meet that high standard. Accordingly, I recommend Plaintiff's inhumane conditions of confinement claim be dismissed with prejudice.

### B.    State Law Claims

Plaintiff also alleges Defendants ISC and Does violated California Civil Code § 52.1, which "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by 'threats, intimidation, or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018).  Plaintiff says Mr. Weiss violated this state statute by threatening him with a gun and mace when he requested a shower and a pack of cigarettes.  (Doc. Nos. 10, 71-7 at 67-69.)  Intervenors National Continental Insurance Company and Scottsdale Insurance Company also bring state law claims regarding insurance policies issued to Defendant ISC.  (Doc. Nos. 54, 63.)

Pursuant to 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction over a related state law claim if it has dismissed all claims over which it has original jurisdiction.  Because Plaintiff's § 1983 claims should be dismissed, I recommend the Court decline to exercise supplemental jurisdiction over the remaining state law claims.  *See Am. Civil Liberties Union v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (explaining when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law as a matter of comity).

## V.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 70) be GRANTED IN PART and DENIED IN PART:

A.    Plaintiff's § 1983 claims against Defendants ISC and Does be DISMISSED with prejudice; and

      B.     All remaining state law claims brought by Plaintiff and the Intervenors be

DISMISSED without prejudice.

    2.     Plaintiff's Motion for Class Certification (Doc. No. 50) be DENIED as moot.

    3.     If this recommendation is adopted, consolidation of this case with *Peters v. Inmate*

*Services Corp.*, 3:18CV00015 BRW be TERMINATED and the two cases be SEVERED.

    DATED this 1st day of November, 2018.

                                     _____

                                     JOE J. VOLPE
                                     UNITED STATES MAGISTRATE JUDGE